<table>
<tr><td>

1

2

3

4

5

6

7
</td><td>
William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
2nd Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 500909
Saipan, MP  96950
Telephone:   (670) 234-7241
Fax:             (670) 234-7530
Email:         fitzgerald.law@gmail.com

Attorney for Plaintiff
</td><td>
**F I L E D**
Clerk
District Court

FEB 1 8 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)
</td></tr>
</table>

8

9

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

10

| | |
|---|---|
| 11  MADELYN JONES, personal<br>representative of John Jones, deceased, | CIVIL ACTION NO.  **20 - 0 0 0 0 4** |
| 12 | |
| 13  Plaintiff, | |
| 14  v. | **COMPLAINT AND DEMAND FOR**<br>**JURY TRIAL** |
| 15  AXE MURDERER TOURS, LLC, HARRY<br>BLALOCK, GREEN FLASH, LLC, JOE<br>MCDOULETT, PADI WORLDWIDE<br>CORP., and PADI AMERICAS, INC., both<br>dba PROFESSIONAL ASSOCIATION OF<br>DIVE INSTRUCTORS, | |
| 16 | |
| 17 | |
| 18 | |
| 19  Defendants. | |

20

21

### JURISDICTION

22

23       1.       This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a).  This

24  is an action of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.

25  Every issue of law and fact is wholly between citizens of different states for diversity purposes.

26

27

28

**VENUE**

2.      Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred in the Commonwealth of the Northern Mariana Islands ("CNMI") and the Defendants all reside or do business in the CNMI.

**PARTIES**

3.      Plaintiff Madelyn Jones, a citizen of the State of Washington, has been appointed the personal representative of John Jones, her late husband, by Order of the Superior Court of the CNMI. *See* Order Appointing Personal Representative, attached hereto as Exhibit "A". Ms. Jones' late husband, John Jones, was a citizen of the State of Washington at the time of his death.

4.      Defendant PADI Worldwide Corporation and PADI Americas, Inc., both dba Professional Association of Dive Instructors or "PADI", is a scuba diving trade association organized under the laws of the State of California.

5.      Defendant Axe Murderer Tours, LLC ("Axe Murderer"), is a Limited Liability corporation and dive tour company organized under the laws of the CNMI.   It is a citizen of the CNMI, and all of its members are citizens of the CNMI. Axe Murderer offers PADI courses to its clients and is considered a "PADI 5 Star Center" by PADI.

6.      Defendant Harry Blalock ("Blalock") is a citizen of the CNMI and resident of Saipan. He is a certified PADI Master Scuba Diver Trainer instructor and the owner and operator of Axe Murderer.

7.      Defendant Green Flash, LLC ("Green Flash"), is a Limited Liability corporation and dive tour company organized under the laws of the CNMI. It is a citizen of the CNMI and all of its members are citizens of the CNMI. Green Flash offers PADI courses to its clients.

8.      Defendant Joe McDoulett ("McDoulett") is a citizen of the CNMI and resident of Saipan. He is a certified PADI dive instructor and the owner and operator of Green Flash.

**FACTS**

9.    In October 2018, Super Typhoon Yutu made landfall on Saipan. Super Typhoon Yutu was an extremely powerful typhoon and caused both personal injuries and property damage on Saipan. The Saipan International Airport sustained significant damage as a result of Typhoon Yutu.

10.    In the aftermath of Super Typhoon Yutu, the United States Federal Aviation Administration ("FAA") provided assistance on Saipan to help re-establish the Saipan International Airport.

11.    John Jones ("Jones") worked for the FAA for 30 years. His usual residence was 2914 NE 8th Place, Renton, WA, and he had lived there for sixteen years.

12.    At the time of Super Typhoon Yutu, he was in the Operations Engineering section for the NAVAID Support Center. The FAA sent Jones to Saipan to help aid in the recovery effort of the Saipan International Airport.

13.    On Sunday, November 18, 2018, Jones had a day off and decided to go scuba diving with a fellow employee, Dana Couto ("Couto").

14.    Being unfamiliar with the waters around Saipan, the pair sought a professional scuba diving guide and were informed that Blalock was a professional dive instructor, certified by PADI, the largest scuba diving agency in the world.

15.    Couto and Jones contacted Blalock and his dive tour company, Axe Murderer, on Saturday, November 17, 2018, to see if Blalock and Axe Murderer could take them diving on November 18, 2018.

16.    Blalock and Axe Murderer agreed and recommended that they dive the Grotto the next day.

3

17.     The Grotto is a collapsed cavern on the northeast tip of Saipan.  It has three underwater passageways that lead out to the Pacific Ocean.  It is an advanced dive suitable only for experienced divers.  More than ten people have died diving the Grotto over the past thirty years.

18.     Blalock met Jones and Couto on the morning of November 18, 2018 at their hotel and drove them to the Green Flash shop to pick up oxygen tanks for the dive. At that point, McDoulett joined the group. McDoulett worked at Green Flash and was a dive instructor there.

19.     McDoullet was licensed as a PADI dive instructor on or about October 22, 2018, but did not have much experience guiding dives and he joined the dive in order to gain more experience, as well as providing professional assistance to Blalock in supervising Jones and Couto and insuring their safety.

20.     When the group neared the site, the gates on the road to the Grotto were locked. Blalock drove around the gates to access the Grotto parking lot.

21.     PADI standards require a formal diving orientation or briefing that allows divers to plan the dive and dive the plan. PADI further advises against engaging in cave or cavern diving unless specifically trained to do so.

22.     Neither Blalock nor McDoullet asked about Jones' diving experience; they did not inform Jones of the level of difficulty and experience needed to safely dive in the Grotto; and they did not inform or obtain Jones' consent as to the risks of harm, including the risks of harm arising from Defendants' conduct, in participating in the dive.

23.     PADI standards requires divers to adhere to a buddy system throughout every dive. A "buddy" assumes the responsibility for monitoring and assisting the other member of the "buddy" team at all times during a dive.

4

24. At the Grotto, Blalock and McDoullet decided not to buddy up with Jones and Couto, but to have Blalock lead the dive and McDoullet trail, with Jones and Couto in between them.

25. At or about 9:00 a.m., the four divers entered the water at the Grotto, submerged and swam together through one of the underwater passages to outside the Grotto.

26. PADI recommends 100 feet as the optimal limit and 130 feet as the absolute limit for recreational diving.

27. During the dive, the group descended to a maximum depth of 111 feet.

28. After approximately twenty-seven minutes into the dive, and when Jones and McDoullet were outside the Grotto in the Pacific Ocean, Jones signaled to McDoulett that he was running low on air. At that time, he was about 30 feet below the surface of the ocean.

29. McDoulett turned away from Jones and swam to Blalock, who was just inside the Grotto at that time and used hand signals to inform Blalock and Couto that Jones was low on air.

30. Blalock used hand signals to point towards the Grotto entrance and continued to swim through the Grotto without checking on Jones.

31. McDoulett also began swimming towards the Grotto entrance without confirming that Jones was following him. After swimming a little bit, McDoulett turned back to look for Jones, but did not see Jones following him. Instead of checking on Jones, McDoulett swam to Blalock and gestured that Jones was missing. Blalock gestured to McDoulett that he should turn back and search for Jones.

32. Blalock and Couto swam back into the Grotto through a passage without Jones.

33. McDoulett swam in the other direction towards the ocean to search for Jones.

34. After Blalock had surfaced with Couto within the Grotto, Blalock swam back through the passage to search for Jones.

5

35. Blalock and McDoulett did not find Jones.

36. The U.S. Coast Guard, U.S. Navy, U.S. Air Force, and the CNMI Department of Public Safety searched for Jones for several days. The search was suspended on November 24, 2018.

37. Jones was never found. A presumptive death certificate was issued March 22, 2019 with a date of death of November 18, 2019.

38. Jones is survived by his wife of 46 years, two children, five grandchildren, and his mother.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE – WRONGFUL DEATH**

39. Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 38.

40. Defendants had a duty to exercise reasonable care in guiding Jones on November 18, 2018 in the Grotto and in the open ocean just outside the Grotto.

41. Defendants breached that duty by:

    a.   Failing to fully inquire as to Jones' dive qualifications;

    b.   Failing to inform Jones of the risks and dangers involved in the dive of the Grotto;

    c.   Failing to abide by the PADI safety standards during the dive;

    d.   Failing to abide by the regulations of the CNMI Safe Diving Act, 3 CMC §§ 5601, 5611;

    e.   Failing to properly communicate with Jones during the dive;

    f.   Failing to keep Jones in sight during the dive; and

6

g.      Failing to keep Jones within their positive control at all times, both within the Grotto and in the open ocean just outside the Grotto.

42.     As a proximate cause of defendants' negligent actions, Jones died.

43.     Plaintiff, the wife of John Jones, has been damaged by Jones' wrongful death and is entitled to recover her pecuniary losses and other damages allowed by law, which exceed $75,000.

## SECOND CAUSE OF ACTION

## NEGLIGENCE OF PADI

44.     Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 43.

45.     Defendant PADI had a duty to exercise reasonable care in monitoring its members and partners to ensure that the members and partners using the PADI brand and PADI logos and certifications actually comply with PADI safety standards when those members and partners use the PADI brand and PADI logos and certifications, which are designed to serve as a marketing device to give customers the assurance of competence and adherence to PADI's safety standards.

46.     Defendant PADI breached that duty by failing to ensure and enforce the following safety standards:

a.      Safety standard of refraining from cave or cavern diving unless specifically trained to do so;

b.      Safety standard of planning the dive beforehand and diving the plan, including communications, procedures for reuniting in case of separation, and emergency procedures;

c.      Safety standard of adhering to a buddy system during the dive;

d.      Safety standard of staying within depth limits for recreational divers;

e.      Safety standard of allowing a margin of safety during the dive.

7

47.     As a proximate cause of defendant's negligent actions, Jones died.

48.     Plaintiff, the wife of John Jones, has been damaged by Defendant PADI's negligence in the wrongful death of Jones and is entitled to recover its pecuniary losses and other damages allowed by law, which exceed $75,000.

## THIRD CAUSE OF ACTION

## VICARIOUS LIABILITY OF PADI

49.     Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 48.

50.     Defendant PADI offers a partner program, whereby instructors become a PADI Dive Center or Resort and may use the PADI brand and logo, offer PADI educational materials and courses to clients, use marketing campaigns and materials provided by PADI, and more.

51.     Defendant PADI identified Defendant Axe Murderer as a "PADI 5 Star Center".

52.     Defendants acted as agents of Defendant PADI by promoting, offering, and conducting dive courses and certifications through PADI.

53.     Defendant PADI profited from and governed, controlled, and monitored, either directly or indirectly, the acts of Defendants as agents of Defendant PADI.

54.     Defendants were acting as agents of Defendant PADI during the dive.

55.     PADI claims and represents to divers relying upon the PADI certification for competence and safe diving practices that it has a comprehensive monitoring system to insure all of its certified instructors comply with its safety standards.

56.     PADI had a duty to comply with the representation made to the diving public to conduct a monitoring program of its instructors to insure that they complied with the safety standards established by PADI.

8

57.     PADI intentionally failed to conduct a monitoring system to insure compliance by its certified instructors with its safety standards and this failure resulted in Defendants Axe Murderer, Blalock, Green Flash, and McDoutlett failing to comply with PADI's own safety standards.

58.     These failures were the proximate cause of decedent's death.

59.     Defendant PADI is vicariously liable for the negligent actions of Defendants that caused the death of Jones.

60.     Plaintiff, the wife of John Jones, has been damaged by the wrongful death of Jones and is entitled to recover her pecuniary losses and other damages allowed by law, which exceed $75,000.

## FOURTH CAUSE OF ACTION

## BREACH OF CONSUMER PROTECTION ACT

61.     Plaintiff realleges and incorporates by reference as if fully set forth herein paragraphs 1 through 60.

62.     CNMI Consumer Protection Act prohibits unfair competition, including the use of false or misleading statements to the public. *See* 4 CMC §§ 5101-5123.

63.     Defendants have committed unfair and deceptive practices in violation of the CNMI Consumer Protection Act by making the following misrepresentations:

   a.     Defendants adhere to the safety standards set forth by PADI; and

   b.     PADI proactively monitors and confirms Defendants meet PADI's safety standards.

64.     John Jones relied on Defendants' PADI certification/association in choosing to dive with Defendants.  John Jones rightfully expected that Defendants would adhere to and implement the PADI standards applicable to his dive in the Grotto.

9

65.     Plaintiff, the wife of John Jones, has been damaged by Defendants' conduct and is entitled to recover its pecuniary losses and other damages allowed by law, which exceed $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

1.     A monetary judgment for all damages arising from defendants' negligence.

2.     An award of post-judgment interest as allowed by law.

3.     An award of attorneys' fees and other costs and expenses as allowed by law;

4.     Such other and further relief as this Court deems just and proper.

DATED this 18th day of February, 2020.

LAW OFFICE OF WILLIAM M. FITZGERALD

By: William M. Fitzgerald
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury.

DATED this 18th day of February, 2020.

LAW OFFICE OF WILLIAM M. FITZGERALD

By: William M. Fitzgerald
Attorney for Plaintiff

10

# EXHIBIT A

By order of the court, **GRANTED** *Judge Kenneth L. Govendo*

William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
2nd Fl. Macaranas Bldg., Garapan Beach Road

3    P.O. Box 500909
     Saipan, MP 96950
4    Tel:    (670) 234-7241
     Fax:    (670) 234-7530
5    Email:  fitzgerald.law@gmail.com


E-FILED
CNMI SUPERIOR COURT
E-filed: Jan 30 2020 01:49PM
Clerk Review: N/A
Filing ID: 64671648
Case Number: 20-0016-CV
N/A

6
     Attorney for Petitioner Madelyn Ann Jones
7

8                         **IN THE SUPERIOR COURT**
                                **FOR THE**
9          **COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

10

11   IN THE MATTER OF JOHN J. JONES,          CIVIL ACTION NO.
     deceased.
12
                                              [PROPOSED]
13
                                              **ORDER   APPOINTING   PERSONAL**
14                                            **REPRESENTATIVE**

15

16
             PETITIONER'S *ex parte* motion, having come before this Court, on the petition
17
     of Madelyn Ann Jones, for her appointment as personal representative to prosecute a claim
18
     for relief arising out of the death of her spouse, John J. Jones, and the Court, having
19
     considered the underlying petition, and being of the opinion that a cause of action, does, in
20
     fact, exists, and the Court having found that Petitioner Madelyn Ann Jones is fully qualified
21
     to act as personal representative of the decedent, John J. Jones, to bring a cause of action
22
     arising out of John J. Jones' death,
23
             IT IS HEREBY ORDERED that Madelyn Ann Jones be, and she hereby is,
24
     appointed personal representative of the decedent, John J. Jones, for the prosecution of a
25
     civil action arising out of his death.
26   //
27   //
28

1    SO ORDERED this _____ day of January, 2020.

2

3
                                         _____
4                                        Judge of the Above Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This document constitutes a ruling of the court and should be treated as such.

**Court:** MP CNMI Superior Court

**Judge:** Kenneth L Govendo

**Case Number:** 20-0016-CV

**Case Name:** IN THE MATTER OF JOHN J. JONES, deceased.

**/s/ Judge Govendo, Kenneth L**